UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 00-6152

## CIV-DIMITROULEAS

| | | |
|---|---|---|
| MONIQUE II, LTD., a Nevada Limited Liability Company, | ) ) ) | CASE NO. MAGISTRATE JUDGE JOHNSON |
| Plaintiff, | ) ) | MAGISTRATE JUDGE: |
| vs. | ) ) | |
| MAGNUM MARINE CORPORATION, a Florida corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

### COMPLAINT FOR DAMAGES

Plaintiff Monique II, LTD sues Defendant Magnum Marine Corporation, and says:

### Jurisdiction, Parties and Venue

1.      This is an action for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs.

2.      Plaintiff is a Nevada Limited Liability Company.

3.      At all times material hereto, Plaintiff was acting through its agents, including, but not limited to its owner and President, Mike Brown, who has assigned to the Plaintiff any and all claims personal to him.

4.      Defendant is a Florida corporation with its principal place of business in Dade County, Florida.

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332.

1



6.      Venue is appropriate in this District pursuant to 28 U.S.C. §1391(a) because the Defendant does business through one or more offices and agents in Dade County, Florida and the majority of acts and omissions giving rise to this action occurred in Dade and Broward County, Florida.

### Background Allegations

7.      Defendant is in the business of manufacturing, marketing and selling high-performance custom motor yachts.

8.      On or about October 30, 1998, Plaintiff entered into a written Sales Agreement (the "contract") with Defendant, pursuant to which Plaintiff agreed to pay Defendant $1,535,152 for the manufacture and purchase of a Magnum 50' Bestia Motor Yacht, to be named "Monique". A copy of the contract is attached hereto as Exhibit "A".

9.      Plaintiff made all payments due under the contract in a timely fashion, and the closing took place on December 17, 1999.

10.     After the closing documents were executed, the Defendant delivered the vessel to Plaintiff in Fort Lauderdale.

11.     Plaintiff's agents boarded the vessel, only to find various cracks and other defects that did not appear at final inspection, and evidently surfaced or were caused while the Defendant was repositioning the vessel from Miami to Fort Lauderdale.

12.     The vessel was returned to the Defendant for repairs, and the Defendant purported to make them.

13.     Thereafter, the Plaintiff hired a professional ship's captain to take the vessel from Miami to Mr. Brown in the Bahamas.

2

14.    When the vessel arrived, there was obvious evidence of defects, as reflected in the January 6, 2000 Robert W. Hirst & Co. Ltd. preliminary survey and damage report attached hereto as Exhibit "B". That report was prepared pursuant to an inspection of primarily the engine room, and while the vessel was still in the water.

15.    Thereafter, due to concerns raised by the evident defects and the preliminary survey, Plaintiff had the vessel hauled out of the water and commissioned a second survey. A copy of that second survey report, dated January 26, 2000, is attached hereto as Exhibit "C".

16.    In addition to the above, Plaintiff learned that there was a defect in the hull mold which renders the vessel unstable, that the vessel was engineered to accommodate engines with up to 1100 horsepower but was equipped (pursuant to the contract in this case) with engines having 1400 horsepower without any modification with respect to engineering, and defendant failed to maintain adequate records to document what materials went into the vessel.

17.    In the meantime, and for the express purpose of preserving its rights in a timely fashion, Plaintiff sent Defendant a letter on January 20, 2000 rejecting the vessel under Fla.Stats.§ 672.602, revoked any actual or purported acceptances under §672.209(5) and §672.608, and offered to let the Defendant survey and inspect the vessel pursuant to §672.515. A copy of the letter is attached as Exhibit "D".

18.    All conditions precedent to this action have occurred, been satisfied or been waived.

19.    Plaintiff has retained the undersigned law firm and is obligated to reimburse the firm for its costs and to pay the firm a reasonable fee for its services.

3

## Count I
## Breach of Contract

20.    Paragraphs 1 through 19 are incorporated by reference as if fully set forth herein.

21.    The vessel cannot be repaired to the extent necessary to render it fit and acceptable under the terms of the contract and applicable law.

22.    By failing to deliver a fit and acceptable vessel or even a vessel that could, through reasonable repairs, be rendered fit and acceptable, Defendant breached a dependent covenant of the contract.

23.    Plaintiff is entitled to reject the vessel under the contract and pursuant to the aforementioned provisions of the Uniform Commercial Code.

24.    Plaintiff has timely invoked its right to reject the vessel and revoke any actual and implied acceptance.

25.    Given that application of any limited warranties issued with the vessel would defeat the very purposes of the contract and of the Uniform Commercial Code, Plaintiff is entitled to demand a refund of its purchase price or a replacement vessel, which Plaintiff has done.

26.    Defendant has failed and refused to provide a refund or a replacement, or to agree to provide the Plaintiff with either.

27.    Defendant is in breach of the contract, and Plaintiff has sustained damages as a result.

WHEREFORE, Plaintiff Monique II, LTD demands judgment against the Defendant for rescission, revocation and restitution or, in the alternative, for compensatory damages, in addition to

4

costs of this action, reasonable attorney's fees pursuant to the contract, prejudgment interest, and such other and further relief as the Court deems appropriate.

WE HEREBY CERTIFY that a true and correct copy of the foregoing, along with Plaintiff's First Requests to Produce, an original and a copy of Plaintiff's First Set of Rule 26.1 Interrogatories, and a copy of Plaintiff's Notice of Deposition were served upon the Defendant this 27th day of January, 2000, by facsimile transmission and U.S. Mail to defense counsel, James N. Hurley, Esq., FOWLER, WHITE et al., Nationsbank Tower, 17th Floor, 100 S.E. Second Street, Miami, Florida 33131 (f) (305) 789-9201 upon the consent and agreement of defense counsel to accept service on behalf of the Defendant.

> BOSSHARDT & EDWARDS, P.A.
> Attorneys for Plaintiff
> 1600 S.E. 17th Street Causeway
> Suite 405
> Fort Lauderdale, Florida 33316
> (p) (954) 764-7772
> (f) (954) 764-8176
>
> By:  _____
> Robert R. Edwards, Esq.
> Fla. Bar No. 770851



**MAGNUM MARINE CORPORATION**
**2600 NORTHEAST 188TH STREET**
**NORTH MIAMI BEACH, FL 33180**
**TEL: (305) 931-4292 FAX # (305) 981-0086**

# SALES AGREEMENT                    s5015a

**CLIENT: Mr. Mike Brown**                    10/30/98
        **Carson City, Nevada**                    page 1 of 2

HULL # ___Magnum 50-___    MODEL __**Magnum 50' Bestia**__
Year 2000

HULL: __Pending__ BOTTOM __Pending__ DECK __Pending__ BOOTSTRIPE _____

ENGINES: __2 x Caterpillar 3412TA 1400HP__ DRIVES: __Arneson ASD12 Surface Drives__

| | |
|---|---:|
| **MAGNUM 50' BESTIA WITH ALL STANDARD EQUIPMENT:** | **$1,099,000.** |
| **OPTIONAL EQUIPMENT:** | |
| Caterpillar 3412TA Huei of 1400 HP in lieu of standard | $ 332,000 |
| Arneson Drives ASD12 | $ 145,120. |
| Air conditioning, computer controlled w/ reverse cycle | $ 24,000. |
| Bartell anti-corrosion system | $ 4,500. |
| Hatch over master cabin | $ 2,400. |
| Bar combination with refrigerator (storage to open fm top) | $ 14,800. |
| Oil changing system | $ 4,200. |
| Microwave oven w/ custom cabinetry & vent | $ 2,800. |
| Radio/Stereo with Cassette Player, Amplifier & Equalizer w/ cd | $ 4,950. |
| Shower over Swim Platform | $ 805 |
| Safe, small combination in stateroom - concealed(push button style) | $ 1,800. |
| Non-skid on complete deck and sides | $ 6,800. |
| Sundeck, Side Settee & Table, Transom Lounge Seat | $ 32,350. |
| Swim platform - aluminum & two ladders for Arneson installation | $ 19,200. |
| Tonneau Cover | $ 3,500. |
| Bimini top with boot | $ 7,500. |
| Total, Optional Equipment | $ 606,725. |
| Total Boat and Optional Equipment: | $1,705,725. |
| Less 10% Discount: | - 170,573. |
| **TOTAL BOAT & OPTIONS, NET, EX-FACTORY MIAMI:** | **$ 1,535,152.** |

**TERMS:**                    **VALIDITY OF OFFER: 10 DAYS**
30% Deposit with signed Sales Agreement
40% Deposit due upon notification of completion of engine installation
Balance due upon notification of completion of boat

MANAGER: _____ BUYER: _____ DATE: 10/30/98

THIS AGREEMENT IS SUBJECT TO THE TERMS AND CONDITIONS ON REVERSE SIDE. PLEASE
READ THESE PROVISIONS CAREFULLY: This Agreement shall not be binding on Magnum Marine
Corporation, unless it is signed by an officer of Magnum Marine, or its Sales Manager. No other person is
authorized to sign this contract on behalf of Magnum Marine Corporation.

**EXHIBIT**
**A**



**MAGNUM MARINE CORPORATION**
2900 NORTHEAST 188TH STREET
NORTH MIAMI BEACH, FL 33180
TEL: (305) 931-4898 FAX # (305) 931-0068

# SALES AGREEMENT                          s5015a

**CLIENT: Mr. Mike Brown**                 10/30/98
**Carson City, Nevada**                    page 2 of 2

---

HULL # __Magnum 50-__          MODEL __Magnum 50' Bestia__

HULL: _Pending_    BOTTOM _Pending_    DECK    _Pending_    BOOTSTRIPE _____

ENGINES: _2 x Caterpillar  3412TA 1400HP_  DRIVES:  __Arneson ASD12 Surface Drives__

**NET ITEMS:**

| | |
|---|---|
| GPS, Northstar 961XD* | $ 9,795. |
|     Installation (provided the unit will fit in console) | POA |
| Ritchie Electronic Compass | $ 1,295. |
| Robertson Shipmate 8300 VHF | $ 1,900. |
| B & G Network Quad (Depth & Speed w/ tri-ducer) | $ 1,425. |
| Chrome engine package | $ 5,000. |
| Low profile Italian handrail down center of foredeck | $ 1,675. |
| Fender storage in straboard coaming aft | No charge |
| TOTAL NET ITEMS: | $21,090. |

MANAGER: _C. Everett_ BUYER: _____ DATE: _10/30/50_

R. W. (Bill) Hirst, AMS.
President
Res. 284-494-2274

Michael W. Hirst AMS.
Res. 284-495-9836

# ROBERT W. HIRST & CO. Ltd

## Marine Surveyors

P.O. Box 94-Road Town-Tortola-British Virgin Islands
Telephone: 284-494-2399
Fax: 284-494-5173
E-mail: rwhirst@surfbvi.com

Thomas Merrigan
Marine Engineer

Paul Carrell
Staff Surveyor

### Damage Report

January 6, 2000
Mr. Michael Brown
of m/v "Monique"



PRELIMINARY DAMAGE REPORT

| | |
|---|---|
| Vessel: | Monique |
| Type: | 50' Magnum fiberglass high performance power yacht powered by twin V-12 turbo charged Caterpillar engines(approx 1500 HP each). Hull ID # indicates vessel built in 1999 using a 2000 model year. |
| Hull ID #: | US-MAG.500158900 |
| Assured: | Mr. Michael Brown |

At the request of Mr. Michael Brown the undersigned marine surveyor attended the subject vessel on January 4, 2000 while she lay at the Bitter End Yacht Club Marina for the purpose of documenting damages to the internal hull structure.

INCIDENT

Mr. Michael Brown owner of the subject vessel reported that the vessel made her maiden voyage from Florida to the British Virgin Islands and that the trip took approx seven days. Upon arrival the owner noted several cracks in the internal grid-work structure in the engine compartment and in transverse floors under the engines. The undersigned surveyor was employed to attend the vessel, document the damages and make recommendations.

GENERAL COMMENTS

The undersigned surveyor made the following observations during his visit to the subject vessel.

### Hull Structure

The hull structure consists of a laminated fiberglass hull(core material if any is unknown to the undersigned) which is reinforced/stiffened by internal stringers and floors. Four primary stringers are provided in the hull which consist of laminated ply-wood cores which are over glassed and fiberglass tabbed to the hull. Each primary stringer is approx 3.25" thick and varies in depth from bow to stern. The transverse structural floors appear to be constructed in a



EXHIBIT

B

imilar manner as the stringers but using different thicknesses of ply-wood. Primary transverse floors seen just fwd f the engine has a thickness of approx 1.25" and a depth equal to the depth of the adjacent stringer. The vessel is lso provided with transverse floors under the engine which in the opinion of the undersigned surveyor are not rimary structures. These structures appear to be installed to add stiffness to the panels between the engine bed tringers and as mounting points for internal hardware.

### Findings

At the time of inspection some very obvious defects were noted in the transverse floors between the engine bed tringers and at the join between the primary transverse floors and the two outboard stringers fwd of the engines. These problems appear to have been caused by flexing of the hull panels due to loads generated when the vessel is underway.

It is also noted that a repair has been made to the join between the port side outboard stringer and the primary transverse floor just fwd of the engine. This repair appears to have failed, with numerous hair line flexing cracks and one fracture seen at the time of inspection.

Listed below are details of damaged internal structures visible at the time of inspection without destructive testing and without the removal of fittings, furnishings or the ships stores.

### Damage List

Damages below are listed from the stern fwd. All structures noted below appear to be symmetrical from port to starboard.

1. Approx 22" fwd of the transom and between the engine bed stringers are two secondary transverse floors one on the port side and one on the starboard side (these floors do not butt against either stringer and are approx 26" long) both of which were found with fiberglass tabbing separation at the inboard end. Tabbing separation on these floors is minimal.

2. Approx 34" fwd of the transom and between the engine bed stringers are another two secondary transverse floors, one on the port side and one on the starboard (these floors do not butt against either stringer and are approx 26" long) both of which were found with fiberglass tabbing separation at the inboard end. The tabbing separation is visible over approx 30% of the length of each of the floors (Port side see photos # 2, 3, 4 & 5. Starboard side see photos 6 &7).

3. Approx 7.2' fwd of the transom and between the engine bed stringers are two transverse floors, one to port and one to starboard. These floors are deeper than floors noted previously(#1 &2) and also extend from stringer to stringer. These floors are also bonded to the stringers with fiberglass tabbing at either end. The port side floor was noted with fractures in the fiberglass tabbing at the join to the outboard stringer, a break at the

Page 2 of 4

center and a break where it meets the inboard stringer. The starboard side floor was found with a construction defect where it bonds to the inboard stringer(appears to be a miss-cut in the floor). A hair line crack is also visible emanating from the floor defect. This area also appears to have had some additional gelcoat applied in way of the defect. No defects were noted in the center or the outboard end of the starboard floor as far as could be determined without the removal of machinery for closer inspection (Port side see photo # 8, 9 & 10. Starboard side see photo #11 & 12).

4.  The primary transverse floor approx 12' fwd of the transom and just fwd of the engines was found with a fiberglass repair on the port side where the floor meets the outboard stringer and fiberglass fractures on the starboard side where the floor meets the outboard stringer. This floor unlike other floors extends from the outboard stringers to the hard chines and approx half way up the topsides. The repair to the port side floor/stringer cross only covered the upper portion of the stringer/floor and appears to have failed. The repair was found with a fracture and numerous hair line cracks running in a fwd and aft direction. The cracks at this repair also appear to be consistent with unrepaired cracks noted on the starboard/opposite side. The cracks to the starboard side or the floor/stringer cross run in a fwd and aft direction over the top of the section and appear to be related to the floor not to the stringer (Port side see photo #13, 14, 15 & 16. Starboard side see photo # 17 & 18).

5.  The raised area of hull approx 6.4' fwd of the transom on the port side(raised to accommodate grounding plate or a sacrificial zinc, possibly flush mounted on hull exterior) was found with gelcoat flexing cracks at the aft end. The gelcoat was not removed in this area for inspection of the underlying laminates (see photo # 19).

Surveyors Notes:     *The damaged internal structures appear to be limited to the engine compartment under the engines and just fwd of the engines. The undersigned inspected all other structures that were accessible through manufacturer provided inspection hatches; No destructive testing or removal of fittings, furnishings or the ships stores was undertaken at this time. No other structural defects, delamination's of fiberglass tabbing's or fractures of fiberglass structures were visible in accessible areas at this time.*

**Recommendations for repairs to above noted damages.**

A.  It is recommended that the manufacturer is consulted regarding items 1-5 on the damage list and asked to provide recommendations for the repairs to these structures.

B.  It is highly recommended that this vessel is hauled out for inspection of the hull exterior wetted surface areas. The hull bottom in way of the engine compartment should be closely inspected for any flexing cracks in the

gelcoat.  If any cracks are found it would indicate that the flexing of the hull panels is excessive and extensive repairs and internal structural upgrades will probably be required.

*Surveyors Notes:*　　*The old repair noted on the port side stringer/floor cross fwd of the engine has proved inadequate.  It is possible that the internal structures in the engine compartment will have to be redesigned and possibly upgraded to prevent future problems of the same nature.*

## CONCLUSION

The damages noted above appear to be mainly in secondary structures.  The primary longitudinal structures(stringers) appear without defect as far as could be determined from visual inspection.  This leads the undersigned to believe that the hull is generally sound but will probably require some moderate repairs and possible redesign of secondary transverse structures.

Enclosures:　　Four page Photo Report(with 19 scanned photo's) and unmounted original printed photo's(for better detail).

Submitted without Prejudice,

Michael Hirst.

Accredited Marine Surveyor.
Society of Accredited Marine Surveyors.

# ROBERT W. HIRST & CO Ltd.
# Marine Surveyors
### P.O. Box 94 - Road Town - Tortola - British Virgin Islands
### Telephone: (284) 494-2399

### Fax: (284) 494-5173

## FAX COVER LETTER

TO: Mr. Reginald Morris            DATE:  January 26, 2000

Bosshardt & Edward P.A.            FROM: Michael Hirst

FAX #:  1 954 764 8176            TOTAL PAGES:  Six

## SUBJECT:

### m/v "Monique"

Dear Mr. Morris,

Please find with this fax a copy of the written portion of the "Bottom Inspection" report on the subject vessel. As discussed on the phone yesterday, Mr. Brown has requested that I send this report and related photographs for your attention.

The complete report with photographs will be sent to you by DHL this morning.

If you have any questions please feel free to call or fax me.

Regards,

Michael Hirst.
Accredited Marine Surveyor
Society of Accredited Marine Surveyor.

**EXHIBIT**

*C*

R. W. (Bill) Hirst, AMS.
President
Res. 284-494-2274

Michael W. Hirst AMS.
Res. 284-495-9836

# ROBERT W. HIRST & CO. Ltd
## Marine Surveyors
P.O. Box 94-Road Town-Tortola-British Virgin Islands
Telephone: 284-494-2399
Fax: 284-494-5173
E-mail: rwhirst@surfbvi.com

Thomas Merrigan
Marine Engineer

Paul Carrell
Staff Surveyor

### Damage Report

January 24, 2000

Mr. Michael Brown

c/o Mr. Reginald Morris

Bosshardt & Edward P.A.

1600 SE 17th St. Causeway

Ft. Lauderdale Fl.

33316

## DAMAGE REPORT BOTTOM INSPECTION

| | |
|---|---|
| Vessel: | Monique |
| Type: | 50' Magnum fiberglass high performance power yacht powered by twin V-12 turbo charged Caterpillar engines(approx 1500 HP each). Hull ID # indicates vessel built in 1999 using a 2000 model year. |
| Hull ID #: | US-MAG.500158900 |
| Owner: | Mr. Michael Brown |

At the request of Mr. Michael Brown the undersigned marine surveyor attended the subject vessel on January 21 & 24, 2000 while she lay hauled out at "Tortola Yacht Services Yard" for the purpose of documenting damages to the hull exterior. This report deals specifically with the hull exterior wetted surface areas. For details regarding the damages to the internal hull structure see "R.W. Hirst & Co. Ltd" report dated January 6, 2000.

## GENERAL COMMENTS

The vessel was hauled out at Tortola Yacht Services Yard on January 19, 2000 to allow the undersigned to make inspections and reports(see photo # 1& 2). The following is a description of the hull structure and list of observations and damages seen during this inspection. The hull exterior was inspected visually and sounded with phenolic and acetate hammers at this time.

### General comments on hull structure

The hull appears to have a gelcoat exterior, over what is reported to be hand laid fiberglass laminates. Details of the internal structure are noted in previous report dated January 6, 2000. Gelcoat is a purple color and no bottom paint has been applied. At this time the undersigned noted numerous gelcoat flexing cracks on the hull exterior bottom, mainly under the engines. The following list gives the location and dimension of each visible crack/defect on the hull exterior.

## DAMAGE LIST

### Visible damages noted at this time.

1. Port side starting approx 16" fwd of the transom and approx 12" from the centerline of the hull a group of gelcoat flexing cracks were seen running fwd over approx 74".

2. Port side starting approx 14" fwd of the transom and approx 51" from the centerline of the hull a group of gelcoat flexing cracks were seen running fwd over approx 60"(see photo #5).

3. Port side starting approx 90" fwd of the transom and approx 51" from the centerline of the hull a group of gelcoat flexing cracks were seen running fwd over approx 34".

4. Port side approx 84" fwd of the transom at the inboard fwd & aft strake a group of approx 2" gelcoat flexing cracks were visible. These cracks ran in a transverse direction(see photo #4).

5. The grounding plate approx 112" fwd of the transom on the port side was found with transverse gouges in the gelcoat. These gouges do not appear to be cracks but should have further investigations made.

6. The external runner just outboard of grounding plate noted in #5 above was found with a 6" long longitudinal gelcoat flexing crack.

7. The starboard side starting approx 16" fwd of the transom and 14" up from the centerline of the hull a group of gelcoat flexing cracks were seen running fwd over approx 60"(see photo #6).

8. The starboard side approx 77" fwd of the transom a group of transverse flexing cracks were seen at the inboard fwd & aft strake. One crack was seen extending down into the hull in a transverse direction over

approx 16", all other cracks appear to be contained in the strake(see photo #7). This gelcoat flexing crack, of all visible cracks is of the most concern in the opinion of the undersigned.

9.  The starboard side approx 32" fwd of the transom, adjacent and inboard of the outboard fwd & aft strake an 18" gelcoat flexing crack was seen(see photo #8).

10. The starboard side approx 134" fwd of the transom was found with a group of transverse gelcoat flexing cracks at the inboard fwd & aft runner. These cracks do not appear to extend into the hull(see photo #3).

11. The starboard side was seen with a 3" long flexing crack where the inboard fwd & aft strake meets the transom.

12. The starboard side was seen with a 5.5" gelcoat flexing crack which extends aft from the lower corner of the recessed moulding for the grounding plate.


**General comments regarding the gelcoat.**

The purple gelcoat on the bottom of the vessel was noted with some moderate defects from the moulding procedure. At this time the bottom was noted with approx 18 small areas where the gelcoat was patched. These small patches were between 0.5" and 4" in diameter and are probably due to air bubbles/voids caught between the laminates and the gelcoat during the construction process. These minor voids appeared to have been filled with a purple gelcoat which is a lighter shade than the original hull(see photo #10). One such area on the starboard side fwd of midships has not been finished(repair is rough gelcoat that has not been sanded down and polished)(see photo #9).


It was also noted that two different shades of gelcoat were present on the bottom panels of the hull exterior. On the port side this area of discolored gelcoat extended from approx 80" fwd of the transom, aft to the transom and from the port chine to approx 6' from the centerline of the hull(see photo #12). On the starboard side the area of discoloration extended from 125" fwd of the transom, aft to the transom and approx 6" up from the centerline of the hull to the outboard strake(patch total width approx 52")(see photo #11). These discolorations also extend up the transom on port and starboard sides to approx 32" up from the deepest point(see photo #13). The central area of the transom, between the Arneson drives did not have discolored gelcoat.

·01/26/2000 11:12 FAX 2844945173          RW HIRST                    ☑05

Case 0:00-cv-06152-WPD     Document 1     Entered on FLSD Docket 02/01/2000     Page 16 of 21
R.W. Hirst & Co Ltd.

It was reported by Mr. Scott Smith(owners agent) that these areas of discoloration on the bottom and on the transom are due to a mould defect which necessitated filling out an indented area of the hull and refinishing by the manufacturer.

Surveyors Note:      The undersigned cannot determine without destructive testing if the report from Mr. Smith is accurate or how much material was added to correct this reported defect in the original lay-up. In the opinion of the undersigned the areas of gelcoat discoloration noted above would indicate some major repairs/corrections were made to the hull exterior.  It also appears that the Arneson drives were fitted to the vessel before the hull bottom was re-sprayed with gelcoat(new gelcoat was seen sprayed onto the Arneson drive unit on the starboard side)(see photo #14).


**Findings after sounding**

The hull was sounded using phenolic and acetate hammers during the undersigned's inspection.  At that time no significant delamination's were evident but it was noted that the flat panels below the lower runner in the aft end of the bottom were found with what the undersigned considers excessive deflection.   These panels also have some of the most significant flexing cracks seen on the hull as noted above.


RECOMMENDATIONS

The builder of the vessel, Magnum Marine, should be contacted and arrangements made for inspections and sampling of the laminates in question for analysis.  After analysis the builder should determine what should be done to rebuild the hull to a satisfactory strength, in a way that is acceptable to the owner.


CONCLUSION

It appears that most flexing cracks seen at this time are related to panel flexing due to high loads created when the vessel is underway.  These cracks could also be attributable to hard spots created by internal structure, inadequate panel rigidity and/or inadequately sized and/or an inadequate number on internal support structures.  It is also believed that the internal failures noted in "R.W. Hirst & Co Ltd" report dated January 6, 2000 are related to panel

·01/26/2000 11:12 FAX 2844945173          RW HIRST                                    ☑06

Case 0:00-cv-06152-WBD     Document 1     Entered on FLSD Docket 02/01/2000     Page 17 of 21
R.W. Hirst & Co Ltd.

flexing. It appears that the gelcoat flexing cracks noted in this report are significant and will probably get worse with time. In the opinion of the undersigned marine surveyor, patches made to the bottom of planing hulls that exceed 40 mph commonly have bonding failures between the patch and the original hull and therefore this repair methodology is not considered to be acceptable on the subject vessel. Additionally it is noted that during the undersigned marine surveyors inspection using phenolic and acetate hammers no significant delamination could be determined in hull panels. This does not necessarily mean that delamination does not exist, it means that delamination could not be determined using techniques employed at this time. The undersigned feels that the manufacturer should take into consideration the possibility that delamination does exist and any laminate tests should include tests for delamination.


Enclosures:     Photo Report(with 14 scanned photo's) and two copies of unmounted original printed photo's(for
                better detail).


Note:All defective areas noted above were photographed during the undersigned's initial inspection. Due to the highly reflective surface and size of cracks, not all photographs gave adequate detail and therefore only photo's of certain cracks were used in the photo report. Additionally "chalk" was used on the hull to help show cracks and outline discolorations.


Submitted without Prejudice,

Michael Hirst.

Accredited Marine Surveyor.

Society of Accredited Marine Surveyors.

*Law Offices*

# BOSSHARDT & EDWARDS, P.A.

1600 SOUTHEAST 17TH STREET CAUSEWAY
SUITE 405
FORT LAUDERDALE, FLORIDA 33316

KURT E. BOSSHARDT
ROBERT R. EDWARDS
REGINALD P. MORRIS, JR.
J. PAUL CARLAND II

TELEPHONE (954) 764-7772
FACSIMILE (954) 764-8176

## VIA TELECOPY

January 20, 2000

Ms. Katrin Theodoli
Magnum Marine Corporation
2900 N.E. 188th Street
North Miami Beach, Florida 33180

Re:    Mike Brown – "Monique"
      Our File No. 10291-1420

Dear Ms. Theodoli:

Please be advised that Mike Brown and Monique II, Ltd. hereby reject the Magnum 50' Bestia motor yacht HIN #USMAG50015B900 pursuant to Fla.Stats.§ 672.602 and the Uniform Commercial Code ("UCC"). Any prior acceptances or purported acceptances of the vessel by or on behalf of the owner are hereby revoked pursuant to Fla.Stats.§§ 672.209(5) and 672.608. Brizendine & Associates, Inc., who you have evidently retained to survey the vessel, may do so pursuant to Fla.Stats.§672.515 for the purposes of ascertaining facts and preserving evidence for trial. If it is your intention that they do so, please confirm the same in writing and we will make the necessary arrangements.

The reasons for rejection include, but are not necessarily limited to, the following:

1.    defects in transverse floors caused by an apparent flexing of the hull panels due to loads generated when the vessel is underway ;

2.    flexing cracks throughout the vessel that appear to have been painted over and to have failed previous repairs;

3.    tabbing separation on tranverse floors on port and starboard sides;



**EXHIBIT**

D

Page 2/Theodoli letter

4.    fractures in a port side transverse floor; with a break at the center and a break where it meets the inboard stringer;

5.    a construction defect and a hairline fracture on the starboard side floor where it bonds to the inboard stringer;

6.    fractures and evidence of obvious (and unsatisfactory) repairs on the primary transverse floor approximately 12' forward of the transom and just forward of the engines;

7.    evidence of obvious (and unsatisfactory) repairs to the port side floor/stringer cross which only covers the upper portion of the stringer/floor and has failed;

8.    unrepaired cracks on the starboard side;

9.    gelcoat flexing cracks at the aft end of the raised area of the hull 6.4' forward of the transom on the port side

10.    defective and unusable bimini top

Pictures are available for inspection upon request.

You should note that the defects listed appeared almost immediately after our client took possession of the vessel, and include only those defects that are visible to the naked eye without destructive testing or removal of fittings, furnishings or ship stores. We are in the process of obtaining a more extensive report, but wanted to give you prompt notice of the noted defects and of our rejection of the vessel. In addition to the above, we have been advised that the engineering plans utilized were inadequate in that they were generated to accommodate two 1100 horsepower engines while this vessel was to be and is equipped with two 1400 horsepower engines. Your suggestion that the damages were caused by abuse of the boat during its maiden voyage are undermined by common sense and the number of defects which evidenced prior unsuccessful repairs.

Please consider this our demand for rescission of the purchase contract, for a full refund of our client's purchase price, and for reimbursement of expenses incurred in inspection, receipt, transportation, care, custody and control of the vessel, as provided by law. Pursuant to Fla.Stats.§ 672.602(2)(b) we will maintain the vessel with reasonable care for your disposition and for a time sufficient to permit you to retrieve it. You or your designee may contact me to make such arrangements.

Page 3/Theodoli letter

Finally, please note that we have been instructed to file suit, and will file suit in the United States federal court in and for the Southern District of Florida, on Monday, January 24, 2000 unless you have confirmed in writing before then that you will honor the rescission, will retrieve the vessel, will refund our client's purchase price in full, and will reimburse him for all expenses incurred as set forth above. Otherwise, please confirm that you or your counsel will accept service of process by facsimile transmission Monday, failing which we will arrange for personal service either by the United States Marshal or a private process server.

If you have questions or would like to discuss this matter further, please feel free to call me or have your legal counsel do so. We consider your last letter an affront, and do not intend to delay this matter any further or to continue with our efforts to memorialize in writing concessions you make to my clients only to rescind when I ask you for written confirmation.

Sincerely,

Robert R. Edwards

cc:    Mike Brown (via telecopy)
       Todd Russell (via telecopy)

# CIVIL COVER SHEET  CIV-DIMITROULEAS

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

Manicle II, LTD., a Nevada
Limited Liability Company

**DEFENDANTS**

MAGNUM MARINE CORPORATION,
a Florida Corporation,

MAGISTRATE JUDGE
JOHNSON

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  N/A
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) 931-164 7710
Bernhardt & Edwards, P.A.
1000 S.E. 17th St. Suite 405
Fort Lauderdale, FL 33516

ATTORNEYS (IF KNOWN) James N. Hurley
Fowler, White, Burnett
Nationsbank Tower, M. Florida 506 3rd St.
Miami, Florida 33131

**(c)** CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   BROWARD,   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE, HIGHLANDS

## I. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

□1 U.S. Government Plaintiff
□3 Federal Question (U.S. Government Not a Party)

□2 U.S. Government Defendant
☑4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑1 | □1 | Incorporated or Principal Place of Business In This State | □4 | □4 |
| Citizen of Another State | ☑2 | □2 | Incorporated and Principal Place of Business In Another State | ☑5 | □5 |
| Citizen or Subject of a Foreign Country | □3 | □3 | Foreign Nation | □6 | □6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☑1 Original Proceeding
□2 Removed from State Court
□3 Remanded from Appellate Court
□4 Reinstated or Reopened
□5 Transferred from another district (specify)
□6 Multidistrict Litigation
□7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| □ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B□ 610 Agriculture | □ 422 Appeal 28 USC 158 | □ 400 State Reapportionment |
| □ 120 Marine | □ 310 Airplane | □ 362 Personal Injury – Med. Malpractice | B□ 620 Other Food & Drug | □ 423 Withdrawal 28 USC 157 | □ 410 Antitrust |
| □ 130 Miller Act | □ 315 Airplane Product Liability | □ 365 Personal Injury – Product Liability | B□ 625 Drug Related Seizure of Property 21 USC 881 | | □ 430 Banks and Banking |
| □ 140 Negotiable Instrument | □ 320 Assault, Libel & Slander | □ 368 Asbestos Personal Injury Product Liability | B□ 630 Liquor Laws | **A PROPERTY RIGHTS** | B□ 450 Commerce/ICC Rates/etc |
| □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 330 Federal Employers Liability | | B□ 640 R.R. & Truck | □ 820 Copyrights | □ 460 Deportation |
| □ 151 Medicare Act | □ 340 Marine | **PERSONAL PROPERTY** | B□ 650 Airline Regs. | □ 830 Patent | □ 470 Racketeer Influenced and Corrupt Organizations |
| □ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | □ 345 Marine Product Liability | □ 370 Other Fraud | B□ 660 Occupational Safety/Health | □ 840 Trademark | □ 810 Selective Service |
| □ 153 Recovery of Overpayment of Veteran's Benefits | □ 350 Motor Vehicle | □ 371 Truth in Lending | B□ 690 Other | **B SOCIAL SECURITY** | □ 850 Securities/Commodities/Exchange |
| □ 160 Stockholders' Suits | □ 355 Motor Vehicle Product Liability | □ 380 Other Personal Property Damage | **A LABOR** | □ 861 HIA (1395ff) | □ 875 Customer Challenge 12 USC 3410 |
| □ 190 Other Contract | □ 360 Other Personal Injury | □ 385 Property Damage Product Liability | □ 710 Fair Labor Standards Act | □ 862 Black Lung (923) | □ 891 Agricultural Acts |
| ☑ 195 Contract Product Liability | | | □ 720 Labor/Mgmt. Relations | □ 863 DIWC/DIWW (405(g)) | □ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | □ 864 SSID Title XVI | □ 893 Environmental Matters |
| □ 210 Land Condemnation | □ 441 Voting | B□ 510 Motions to Vacate Sentence | □ 730 Labor/Mgmt. Reporting & Disclosure Act | □ 865 RSI (405(g)) | □ 894 Energy Allocation Act |
| □ 220 Foreclosure | □ 442 Employment | **HABEAS CORPUS:** | □ 740 Railway Labor Act | **FEDERAL TAX SUITS** | □ 895 Freedom of Information Act |
| □ 230 Rent Lease & Ejectment | □ 443 Housing/ Accommodations | B□ 530 General | □ 790 Other Labor Litigation | A□ 870 Taxes (U.S. Plaintiff or Defendant) | □ 900 Appeal of Fee Determination Under Equal Access to Justice |
| □ 240 Torts to Land | □ 444 Welfare | A□ 535 Death Penalty | | A□ 871 IRS – Third Party 26 USC 7609 | □ 950 Constitutionality of State Statutes |
| □ 245 Tort Product Liability | □ 440 Other Civil Rights | B□ 540 Mandamus & Other | □ 791 Empl. Ret. Inc. Security Act | | □ 890 Other Statutory Actions |
| □ 290 All Other Real Property | | B□ 550 Civil Rights | | | A OR B |
| | | B□ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. 1332 / BREACH of CONTRACT/WARRANTY

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
□ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   □ YES   ☑ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE 1/31/00

SIGNATURE OF ATTORNEY OF RECORD  R.M.M. Edwards

**FOR OFFICE USE ONLY**

RECEIPT 518450   AMOUNT $150.00   APPLYING IFP ___   JUDGE 01-3100   MAG. JUDGE